1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   VICTORIA PELAYO,                    )   Case No. ED CV 07-793-PJW
                                         )
11                  Plaintiff,           )
                                         )   MEMORANDUM OPINION AND ORDER
12           v.                          )
                                         )
13   MICHAEL J. ASTRUE,                  )
     COMMISSIONER OF THE                 )
14   SOCIAL SECURITY ADMINISTRATION,     )
                                         )
15                  Defendant.           )
                                         )

16

17        Before the Court is Plaintiff's appeal of a decision by Defendant

18   Social Security Administration ("the Agency"), denying her application

19   for Supplemental Security Income ("SSI") benefits.  Plaintiff asks the

20   Court to reverse the Agency's decision and award benefits or, in the

21   alternative, to remand the case to the Agency for further proceedings.

22   Because the Agency's decision that Plaintiff was not disabled is

23   supported by substantial evidence, it is affirmed.

24        On March 28, 2003, Plaintiff filed an application for SSI,

25   alleging an inability to work as of January 1, 1999, due to

26   depression, nerve damage to her back, asthma, chronic bronchitis,

27   hearing loss, and being at risk for congestive heart failure.

28

1   (Administrative Record ("AR") 96, 98-101, 109.)[1]   Following denials of

2   her claim at the initial and reconsideration levels (AR 61-64, 70-74),

3   Plaintiff requested and was granted a hearing before an Administrative

4   Law Judge ("ALJ").   (AR 20-42, 75.)   On November 12, 2004, the ALJ

5   issued a decision, denying Plaintiff's application for SSI.   (AR 7-

6   16.)   Plaintiff requested review by the Appeals Council, which was

7   denied.   (AR 3-5.)   She then filed an appeal in this court.   On August

8   25, 2006, the Court reversed the ALJ's decision and remanded the case

9   to the Agency with instructions to address the testimony of

10   Plaintiff's sister-in-law.   (AR 322-32.)

11       On February 23, 2007, following remand, the ALJ held another

12   hearing.   (AR 373-89.)   On March 19, 2007, he issued a decision, again

13   denying Plaintiff's claim for benefits.   (AR 290-300.)

14       Plaintiff filed the instant action on July 5, 2007.   She claims

15   that the ALJ erred when he: 1) failed to consider a psychiatric

16   evaluation that was completed by her treating psychiatrist; 2) found

17   that she could perform jobs that were inconsistent with the opinion of

18   the State Agency physician; and 3) failed to pose a complete

19   hypothetical question to the vocational expert.   (Joint Stip. at 15-

20   17.)   For the following reasons, the Court concludes that these claims

21   are without merit.

22

23

24       [1]   This was Plaintiff's second application for SSI.   The first,
raising the same claims and alleging the same onset date, was denied
by the Agency in March 2002.   (AR 52-58.)   Thereafter, the Appeals

25   Council declined review.   (AR 46-48.)   Plaintiff sought review of that
decision in this court.   On January 20, 2006, the Court affirmed the

26   Agency's decision.   *Pelayo v. Barnhart*, CV 04-966.   The Court notes
that, as a result, the Agency's finding that Plaintiff was not

27   disabled at any time prior to March 18, 2002, is res judicata in this

28   pending action.

1    In August 2006, Plaintiff went to a mental health clinic operated
2  by San Bernardino County, complaining of mood swings, depression, and
3  stress.  (AR 339.)  She was initially screened by an individual by the
4  name of Tony Angelo, described in the medical records as a
5  "clinician."  (AR 339-46.)  She was also seen by another health care
6  provider, a psychologist by the name of Swindle, and, perhaps, one
7  other medical care provider.  (AR 337-38, 342.)  Three weeks later, on
8  September 14, 2006, she returned to the clinic and was seen by William
9  Lawrence, M.D.  (AR 335.)  There are no other records from the clinic
10 subsequent to that date.

11    Plaintiff complains that the ALJ failed to properly consider the
12 mental health records from the clinic.  (Joint Stip. at 3-6.)  She
13 focuses particularly on a mental health assessment, which she claims
14 was performed in August 2007, by a health care provider who Plaintiff
15 describes as her "treating physician."[2]  (Joint Stip. at 3.)  This
16 provider found that Plaintiff was suffering from depression and was
17 anxious.  (AR 337-38.)  He or she found that Plaintiff had a Global
18 Assessment of Functioning ("GAF") score of 45.[3]  (AR 338.)  Plaintiff
19 contends that this assessment by her treating doctor established that

20

21    [2]  Plaintiff is unable to provide the name or title of this
"treating doctor" because the signature is illegible and, it would
22 appear, she was seen by this person only once.  (Joint Stip. at 3.)

23    [3]  The GAF score reports a "clinician's judgment of the
individual's overall level of functioning," which is used in "planning
24 treatment and measuring its impact, and in predicting outcome."
American Psychiatric Association, *Diagnostic & Statistical Manual of*
25 *Mental Disorders*, Fourth Edition, Text Revision (hereinafter "DSM-IV-
TR"), p. 34 (4th ed. 2005).  A GAF of 41-50 indicates "[s]erious
26 symptoms (*e.g.*, suicidal ideation, severe obsessional rituals,
frequent shoplifting) OR any serious impairment in social,
27 occupational, or school functioning (*e.g.*, no friends, unable to keep
a job)."  *Id*.
28

1 she was impaired as of August 2007, and that the ALJ failed to take it

2 into consideration.

3      Plaintiff's argument fails for several reasons.  First, the

4 assessment was performed in August 2006, not August 2007.  Though the

5 date entered on the assessment form says that it was completed on

6 August 21, 2007, (AR 337-38), that was obviously a mistake.  The form

7 was included with records Plaintiff's counsel sent to the Agency by

8 fax on December 11, 2006.  The time/date-stamp on the bottom of all 14

9 pages of the medical records shows that they were sent on that date.

10 (AR 334-47.)  The cover sheet from Plaintiff's counsel's office that

11 accompanied the records also indicates that the records were sent on

12 that date.  (AR 334.)  Thus, there is no way that the assessment could

13 have been performed in August 2007.  In fact, a perfunctory review of

14 the documents, which were assembled in reverse chronological order,

15 shows that Plaintiff went to the clinic on August 21, 2006, and, after

16 having been screened by clinician Angelo, was seen by another health

17 care provider--the unidentified "treating physician"--who filled out

18 the form that day.  (AR 334-47.)

19      The fact that the assessment was performed in August 2006,

20 instead of August 2007, renders it almost irrelevant in this case.

21 Three weeks after this assessment was completed, Plaintiff went back

22 to the clinic and met with Dr. Lawrence, who found that Plaintiff was,

23 essentially, asymptomatic and stable on the medications that had been

24 prescribed to her by the doctors at the clinic.  (AR 335 (noting

25 Plaintiff was "alert, cooperative, [oriented to person, place, time,

26 and situation], calm, happy, full appropriate affect, denies [suicide

27 ideation] or [homicide ideation], no [auditory hallucinations], fair

28

4

1   insight, fair judgment, goal directed thinking, not pressured").)

2   (Plaintiff, apparently, never returned to the clinic for further

3   treatment.)

4        Clearly, Dr. Lawrence's glowing assessment three weeks after

5   Plaintiff was initially assessed at the clinic and placed on

6   medication establishes that any psychiatric impairment that was noted

7   on August 21, 2006, did not preclude her from working for 12 months,

8   the relevant period under the regulations.   Thus, the ALJ's failure to

9   specifically explain why he did not rely on that opinion does not

10  mandate reversal, and, therefore, this claim is denied.[4]

11       Plaintiff next argues that the ALJ erred in finding that she

12  could perform jobs that involved simple, routine, repetitive, non-

13  public tasks.   She contends that such jobs were precluded by the State

14  Agency physician, Dr. K. Gregg, who concluded that Plaintiff had

15  moderate limitations in thinking and reasoning.   (Joint Stip. at 8,

16  11.)   This claim, too, is without merit.

17       As an initial matter, the Court notes that the fact that the jobs

18  identified by the ALJ were incompatible with the limitations urged by

19  _____

20       [4]  The Agency's argument that the ALJ was not required to set
    forth his reasons for rejecting the treating physician's opinion is
21  rejected.   In the Agency's view, the ALJ was only required to set
    forth a detailed summary of the facts and conflicting evidence--along
22  with his interpretation of them--and make findings, citing *Magallanes
    v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).   The language from
23  *Magallenes* is dicta.   The Ninth Circuit has repeatedly held that an
    ALJ must set forth specific and legitimate reasons for rejecting a
24  treating physician's opinion and that those reasons must be supported
    by substantial evidence in the record. *See, e.g., Carmickle v.
25  Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); and *Orn
    v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (holding an ALJ may not
26  reject the opinion of a treating physician "without providing specific
    and legitimate reasons supported by substantial evidence in the
27  record") (citation and internal quotation marks omitted).

28

1   the State Agency doctor is immaterial.  Rather, the relevant issue is

2   whether the jobs were inconsistent with the ALJ's residual functional

3   capacity assessment.  To the extent that Plaintiff alleges that there

4   was a conflict between Dr. Gregg's opinion and the ALJ's mental

5   residual functional capacity determination, her argument is

6   unavailing.

7        As to the merits of her claim that the ALJ's findings regarding

8   the jobs she could perform were inconsistent with the evidence, the

9   Court finds that Plaintiff has not established that the ALJ erred.  On

10  July 17, 2003, Dr. Gregg completed a Mental Residual Functional

11  Capacity Assessment form in which he opined that Plaintiff was

12  moderately limited in her ability to understand, remember, and carry

13  out detailed instructions, and in her ability to interact

14  appropriately with the general public.  (AR 180-81.)  He concluded,

15  however, that Plaintiff could perform simple, repetitive tasks with

16  adequate pace and persistence but should not work with the public.

17  (AR 179, 182.)  Thus, the ALJ's finding that Plaintiff could perform

18  simple, routine, repetitive, non-public tasks was wholly consistent

19  with Dr. Gregg's opinion.[5]

20       Further, the ALJ's conclusion that Plaintiff could perform these

21  jobs was supported by the record.  The ALJ called a vocational expert

22  who testified that, based on Plaintiff's residual functional capacity,

23  she could perform three categories of jobs: simple assembler, table

24  worker, and packager.  (AR 381-83.)  Included within each category

25

26       [5]  In his November 2004 decision, the ALJ relied on Dr. Gregg's

27  opinion in concluding that Plaintiff had the mental capacity to
    perform simple, routine, repetitive, non-public tasks.  (AR 13, 15,

28  179-87.)

1  were several jobs that the vocational expert opined Plaintiff could

2  perform.   (AR 382-86 (DOT §§ 706.684-022 (small products assembler),

3  706.684-030 (atomizer assembler), 920.587-018 (hand packager),

4  920.685-078 (machine packager).)   All but one of these jobs required

5  reasoning level two.[6]  Reasoning level two requires a worker to be

6  able to:

7       Apply commonsense understanding to carry out detailed but

8       uninvolved written or oral instructions.  Deal with problems

9       involving a few concrete variables in or from standardized

10      situations.

11  *See e.g.* DOT § 706.684-022.

12       The ability to perform simple, routine, repetitive, non-public

13  tasks--as Plaintiff is able to do--is consistent with reasoning level

14  two.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)

15  (stating that reasoning level two appears more consistent with the

16  capacity to perform "simple and routine work tasks"); *Meissl v.*

17  *Barnhart*, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005) (holding that

18  reasoning level two jobs are consistent with the ALJ's limitation to

19  simple, repetitive tasks); *Flaherty v. Halter*, 182 F. Supp. 2d 824,

20  850 (D. Minn. 2001) (holding that DOT's reasoning level two

21  requirement did not conflict with the ALJ's limitation to "simple,

22  routine, repetitive, concrete, tangible tasks").  The requirement that

23  Plaintiff be able to carry out instructions that are "detailed but

24

---

25       [6]  The work of a table worker requires reasoning level one.  DOT
26  § 739.687-182.  Reasoning level one requires the worker to "[a]pply
    commonsense understanding to carry out simple one- or two-step
27  instructions" and to "[d]eal with standardized situations with
    occasional or no variables in or from these situations encountered on
28  the job."  *Id.*

7

1   uninvolved" does not change the analysis, as Plaintiff argues in her

2   brief.  *See Meissl*, 403 F. Supp. 2d at 985 ("Although the DOT

3   definition does state that the job requires the understanding to carry

4   out detailed instructions, it specifically caveats that the

5   instructions would be uninvolved--that is, not a high level of

6   reasoning.") (citing *Flaherty*, 182 F. Supp. 2d at 850).  As such, the

7   ALJ properly relied on the vocational expert's testimony in concluding

8   that Plaintiff could perform these jobs.  Further, for these same

9   reasons, Plaintiff's contention that the vocational expert strayed

10  from the DOT without providing an adequate explanation is rejected.

11        Lastly, Plaintiff complains that the ALJ failed to pose a

12  complete hypothetical question to the vocational expert because he did

13  not include the limitations found by Plaintiff's purported treating

14  physician in the August 21, 2007 assessment.  (Joint Stip. at 15-16.)

15  As explained above, there was no August 21, 2007 assessment by a

16  treating doctor.  The assessment she focuses on was performed in

17  August 2006, and, three weeks later, another doctor at the same

18  facility found that all of Plaintiff's complaints had been resolved.

19  As such, the ALJ did not err in failing to include in the hypothetical

20  question to the vocational expert the limitations noted by the doctor

21  in August 2006.  *See Magallanes*, 881 F.2d at 756-57 (holding ALJ need

22  only include limitations that are supported by substantial evidence in

23  the record).

24

25

26

27

28

1    For the reasons set forth above, the Agency's decision is

2  affirmed and the case is dismissed with prejudice.

3    IT IS SO ORDERED.

4    DATED:    February __25__, 2009.

5

6    _____

7    PATRICK J. WALSH
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\PELAYO, V 793\Memo Opinion.wpd